McLaughlin, Appellant, et al., *v.* Ohio Veterans' Children's Home, Appellee.

(No. 86AP-76—Decided March 31, 1987.)

*E.S. Gallon & Associates* and *James W. Kelleher,* for appellant.

*Gary J. Leppla,* for Hospital Care Corporation, d.b.a. Blue Cross of Southwest Ohio.

*Anthony J. Celebrezze, Jr.,* attorney general, *Mark T. D'Alessandro* and *Sheryl D. Wiviott,* for appellee.

AMMER, J. This action commenced with the filing of a complaint in the Court of Claims.

The appellant claims that she was injured on the grounds of the Ohio Veterans' Children's Home, which is an agency of the state of Ohio. She contends that she fell on the sidewalk leading to a cottage in which her son resided.

The case was heard initially by the court, solely on the issue of liability. The trial court rendered judgment in favor of the appellee, Ohio Veterans' Children's Home (the "home"). It is from that judgment that the appellant has appealed.

The appellant sustained personal injuries as a result of falling on a sidewalk, which had certain irregularities, at the front of a building operated by the home.

The appellant's son was sent to the institution in June 1982, and was living in a building known as "Cleveland A Cottage" at the time of this incident. The appellant visited him every weekend.

On August 12, 1982, the appellant was granted permission to visit her son and, also, to take him to her home in Dayton for several days. Each time appellant visited her son, she used the front entrance to the cottage. On the date in question, she parked her automobile in front of the cottage occupied by her son.

She went to her son's room and helped him pack some of his personal items. As she was leaving with her son through the front entrance of the cottage, she carried a duffel bag, radio, small box and her handbag.

The appellant contends that the concrete in front of the entrance steps was loose, and that there appeared to be a loose stone of about one and one-half inches to two inches in diameter, in addition to other small bits of concrete and dirt, around the loose concrete. She testified that, after exiting the cottage, she walked onto a landing and then onto a step which she thought was secure. She claims that the concrete crumbled and her foot turned, causing her to lose her balance as she fell to the right. It appears that she landed hard after the fall, causing a fracture of her elbow.

The record indicates that the appellant never had had any problems with the walk entrance on previous occasions in visiting her son.

An enlarged photograph of the front entrance of the cottage, as well as several smaller photographs, was admitted into evidence, and there was testimony from the appellant that the photographs fairly and accurately depicted the area on the date in question. However, these photographs were taken several months later, on December 29, 1982.

Leo Schroeder, who is in the concrete business, testified as to the condition of the sidewalk from the photographs. He indicated that there was concrete deterioration consisting of pieces of concrete about one and one-half inches or more. He did not identify the exact area where the plaintiff fell. His testimony was that weather had quite a bit to do with the condition of a sidewalk, including freezing and thawing, and that it was his opinion that the condition which existed in the photographs was present for about a year prior to the time the photographs were taken.

The trial court, in its opinion, found that the home owed a duty of or-

dinary and reasonable care to appellant to see to it that the sidewalk on the premises was in a reasonably safe condition.

Based upon that initial finding, the court, as the trier of fact, made the following findings:

"1. The condition of the sidewalk to Cleveland cottage was in the condition that it was on August 12, 1982, the date plaintiff fell, for about a year prior to the accident;

"2. That plaintiff by previous visits with her son at the cottage had some familiarity with the existing condition of the sidewalk;

"3. That the accident occurred during daylight hours;

"4. That plaintiff did not establish by a preponderance of the evidence that the deteriorated condition of the sidewalk, at the place she fell, was dangerous for ordinary traversing on the sidewalk;

"5. That there was no credible evidence that the sidewalk at the place plaintiff fell was unreasonably dangerous, as required by *Helms* v. *Am. Legion*, [*infra*], to establish a case of negligence against the defendant."

From the judgment entered for the appellee by the trial court, the appellant has set forth one assignment of error, to wit:

"The trial court's decision is against the manifest weight of the evidence and is contrary to applicable law."

A determination was made by the trial judge that the amount of care required under these circumstances was ordinary care, which would vary under the facts of a case. Both parties have accepted this finding of the trial court, except that the appellant contends that there is an additional duty on behalf of the appellee to provide the appellant, as an invitee, with a warning of the perils associated with walking on the crumbling steps in question.

The possessor of premises owes a duty to an invitee to exercise ordinary and reasonable care for his safety and protection; this duty includes maintaining the premises in a reasonably safe condition, and warning an invitee of latent or concealed defects or perils of which the possessor has or should have knowledge. *Scheibel* v. *Lipton* (1951), 156 Ohio St. 308, 46 O.O. 177, 102 N.E. 2d 453; *Englehardt* v. *Philipps* (1939), 136 Ohio St. 73, 15 O.O. 581, 23 N.E. 2d 829; *Flury* v. *Central Publishing House* (1928), 118 Ohio St. 154, 160 N.E. 679; *S.S. Kresge Co.* v. *Fader* (1927), 116 Ohio St. 718, 158 N.E. 174; *Durst* v. *Van Gundy* (1982), 8 Ohio App. 3d 72, 8 OBR 103, 455 N.E. 2d 1319.

The authorities indicate that there is a duty to warn an invitee of any latent or concealed defects of which the possessor has or should have knowledge. It is then necessary to initially determine whether there are latent or concealed defects or perils as to which the possessor should warn an invitee. There is no question but that the initial standard is to exercise ordinary or reasonable care for an invitee such as the appellant in this case.

The appellant contends that the trial court did not consider the plain and obvious defective condition of the sidewalk depicted in the photographs admitted into evidence, and that the trial judge misapplied the existing law to the facts and evidence in this case.

The appellee claims that from the testimony presented, there is ample evidence to support the findings of the court as the trier of fact, since it is the sole province of the court to weigh the evidence submitted and determine if the sidewalk was reasonably safe for use by the public.

It is noted that Schroeder gave varying evidence relative to estimates of the depth of the broken concrete, varying in size from one-half inch to three-quarters of an inch to an inch.

In the case of *Kimball* v. *Cincinnati* (1953), 160 Ohio St. 370, 52 O.O. 237, 116 N.E. 2d 708, the court held that a variation of one-half to three-fourths of an inch in the height of adjacent sections of a sidewalk was a slight defect commonly found in sidewalks, and that the municipality in which such sidewalk was located was not negligent. The issue relative to imperfections in a sidewalk was considered by the Supreme Court in the case of *Helms* v. *American Legion, Inc.* (1966), 5 Ohio St. 2d 60, 34 O.O. 2d 124, 213 N.E. 2d 734, in which the syllabus reads as follows:

"The owners or occupiers of private premises are not insurers of the safety of pedestrians traversing those premises, and minor or trivial imperfections therein, which are not unreasonably dangerous and which are commonly encountered and to be expected, as a matter of law do not create liability on the part of such owners or occupiers toward a pedestrian who, on account of such minor imperfection, falls and is injured. (*Smith, Admr.*, v. *United Properties, Inc.*, and *Schilliger* v. *Graceland Shoppers Mart, Inc.*, 2 Ohio St. 2d 310, overruled, except the syllabus thereof.)"

In the opinion, Judge Zimmerman stated:

"* * * A majority of this court as now constituted with its regular complement of judges agrees with the dissenting opinion in the *Smith* and *Schilliger* cases to the effect that no liability rests on the owner or occupier of private premises for minor imperfections therein (here almost minimal in extent), which are commonly encountered and are to be expected and which are not unreasonably dangerous, representing 'trivial departures from perfection.' Otherwise, such owner or occupier would be placed in the position of an insurer, and the law does not go that far." *Id.* at 62, 34 O.O. 2d at 126, 213 N.E. 2d at 736.

The latest pronouncement of the Supreme Court of Ohio on the issue of sidewalks is found in the case of *Cash* v. *Cincinnati* (1981), 66 Ohio St. 2d 319, 20 O.O. 3d 300, 421 N.E. 2d 1275, paragraphs one and two of the syllabus, in which the court stated:

"1. Reasonable minds could differ as to whether a 12 to 14 inch wide, one and one-half inch deep, excavation extending into the width of a crosswalk in a heavily pedestrian-traveled downtown section of the city was so substantial that such defect rendered the crosswalk unsafe for travel in the usual and ordinary mode. (*Kimball* v. *Cincinnati*, 160 Ohio St. 370, distinguished.)

"2. In such a case when reasonable minds might differ as to whether a defect in a crosswalk is so trivial as to relieve liability, a trial court properly leaves that issue to the jury, and all the attendant circumstances must be considered in determining whether such a crosswalk is reasonably safe for use by pedestrians."

In that opinion, Judge Holmes stated that:

"Whether this so-called *Kimball* rule might be abandoned or revised on another day, we decline to do so within the context of this case. We need not disturb the basic rule in order to reverse the Court of Appeals here in that we determine that this case may be reasonably differentiated from *Kimball* and its progeny which dealt only with a difference in the elevation of slabs of a sidewalk, and conclude that jury questions are reasonably raised here, and that all the attendant circumstances should be considered in determining liability for defects in the public walkway occasioning the injuries." *Id.* at 323-324, 20 O.O. 3d at 303, 421 N.E. 2d at 1278.

It is to be noted that the court, in *Cash, supra,* did not overrule *Kimball, supra,* but instead distinguished it on the facts of the two cases. In *Helms,*

*supra,* the court simply held that no liability may be imposed for minor imperfections which are normally encountered and to be expected, and which have not become unreasonably dangerous.

In *Cash, supra,* which related to a defect in a crosswalk on a street in the city of Cincinnati, the court held that reasonable minds might differ as to whether the crosswalk was reasonably safe for use by pedestrians since it was located in an area where there were a considerable number of persons negotiating the same during the day, and that, therefore, the issue was one to be decided by the jury.

Applying the holdings of the cases heretofore referred to, the court is of the opinion that the judge in this case, as the trier of fact, reviewed all of the attendant circumstances, and concluded that the appellant was familiar with the premises and its condition, that it was daylight, that there were no diversions to her attention, and that the deterioration of the sidewalk which existed did not render it dangerous for her use. The court thereupon concluded that the home did not breach its duty of ordinary and reasonable care.

In reviewing the testimony in this case, including the photographs and the enlargement, we concur in the finding of the trial judge that the appellant did not establish, by a preponderance of the evidence, that the deteriorated condition of the sidewalk at the place where appellant fell was dangerous for ordinary traversing on the sidewalk, and that there was no credible evidence that the sidewalk was unreasonably dangerous, as required by *Helms* v. *American Legion, Inc., supra,* to establish a case of negligence against the appellee.

The Supreme Court, in the case of *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, stated that judgments supported by some compe-

tent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.

In this case, the Court of Claims had such credible evidence to reach the conclusion that, one, the sidewalk was reasonably safe for use by pedestrians visiting the home and, two, that any defect was not so substantial as to render the sidewalk unreasonably dangerous.

Since the trial court's decision is supported by sufficient credible evidence, this court will affirm that decision.

The appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCORMAC and REILLY, JJ., concur.

AMMER, J., of the Court of Common Pleas of Pickaway County, sitting by assignment in the Tenth Appellate District.