OPINION
Plaintiffs-appellants, Aimee E. Goddard, Jeffrey Goddard, and Midwest Foundation Independent Physicians Association, dba Choicecare, appeal a Warren County Court of Common Pleas decision granting summary judgment to defendants-appellees, Kings Island Amusement Park aka Paramount's Kings Island, Kings Island Company, Paramount Communications, Inc., and Paramount Parks, Inc. (collectively "Kings Island"). We affirm the decision of the trial court.
Mr. and Mrs. Goddard visited Kings Island Amusement Park with their family and friends on July 27, 1994. In the evening, the group went to the Kings Island Festhaus to see a show. The Goddards were seated at a table and ate dinner during the show, and afterwards Mrs. Goddard took two of her daughters to the restroom. On the way, they stopped to throw away some garbage. Both Mr. Goddard, who had remained at the table, and Mrs. Goddard noticed a Kings Island employee changing the garbage bag at a nearby garbage can at that time. Mrs. Goddard and her daughters returned to their table to discuss what they were going to do next. After their discussion, Mrs. Goddard cleared more garbage off the table and was walking toward the nearest garbage can when she slipped and fell.
Within five to ten minutes paramedics arrived, and they told Mrs. Goddard that she had slipped on fluid on the ground. The lighting in the Festhaus was dim and Mrs. Goddard had not seen the substance on the floor near the garbage can before she fell. Mrs. Goddard asked why it had not been cleaned up or marked with a sign, and a paramedic left to find the Kings Island employee who was working in the area at that time. The paramedics carried Mrs. Goddard to a first aid station. Fifteen minutes later, Mrs. Goddard was driven to the hospital.
As a result of the fall, Mrs. Goddard accumulated substantial medical bills. On August 14, 1995, the Goddards filed a complaint against appellees, and shortly thereafter, the trial court granted leave to Choicecare (Mrs. Goddard's insurer) to intervene as a party plaintiff. On October 30, 1998, appellees filed a motion for summary judgement. The trial court granted summary judgment in favor of appellees, and appellants filed this appeal, raising the following assignment of error:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS-APPELLEES SINCE REASONABLE MINDS COULD CONCLUDE THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO ALL ELEMENTS OF A NEGLIGENCE CLAIM.
In their sole assignment of error, appellants argue that the trial court's decision granting of summary judgment in favor of appellees was improper. The trial court determined that there was no issue of material fact and that appellees were entitled to judgment as a matter of law.
Pursuant to Civ.R. 56(C), a summary judgment is appropriate when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. This court reviews a trial court's decision to grant summary judgment denovo. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440,445.
Mrs. Goddard was a business invitee, a person who, by express or implied invitation, came upon the premises of another for some purpose which was beneficial to that owner. Light v. OhioUniversity (1986), 28 Ohio St.3d 66, 68. Therefore, Kings Island owed Mrs. Goddard a duty of ordinary care to maintain the park in a reasonably safe condition so that she was not unnecessarily and unreasonably exposed to danger. Paschal v. Rite Aid Pharmacy,Inc. (1985), 18 Ohio St.3d 203, 203, citing Campbell v. HughesProvision Co. (1950), 153 Ohio St. 9. This duty includes an obligation on the part of Kings Island to warn invitees of latent or concealed defects or perils of which Kings Island had or should have had knowledge. McLaughlin v. Ohio Veterans' Children's Home
(1987), 37 Ohio App.3d 136, 138, citing Scheibel v. Lipton (1951),156 Ohio St. 308. When an invitee is injured because of a dangerous condition on the premises resulting from a foreign substance on the floor, liability will be imposed only if the condition was known to the owner or occupant of the premises or had existed for such a time that it was the duty of the owner or occupant to know of its presence. Bunnell v. Shell Oil Station
(Feb. 26, 1996), Warren App. No. CA95-08-080, unreported, at 3, citing Anaple v. Standard Oil Co. (1955), 162 Ohio St. 537.
The Goddards allege that a liquid substance leaked out of a garbage bag that a Kings Island employee, Eric Woolfork, had changed just moments before Mrs. Goddard slipped and fell. On the day of the accident, both Mr. and Mrs. Goddard stated that the substance on the floor was a result of a leak from a garbage bag that they had observed Woolfork changing. However, when they were deposed, both Mr. and Mrs. Goddard admitted that they did not observe a garbage bag leak and did not see Woolfork, or any other Kings Island employee, cause a spill. Woolfork's affidavit testimony states that he was not aware of anything leaking from the heavy-duty bag, garbage can, or the buggy that held the dirty garbage bags.
At oral argument, appellants' counsel argued that when the area supervisor, Amy VanWassenhove, learned about the spill, she went to tell Woolfork to clean it up, and, upon encountering Woolfork, observed that he already had a mop in his hand. From these facts, appellants argue, one could infer that Woolfork knew about the substance on the floor and had left it unattended when the accident occurred. However, a consideration of the affidavits in this case show that VanWassenhove left to find Woolfork only after emergency medical services had arrived. It was then that she saw Woolfork carrying a mop. According to Mrs. Goddard's deposition testimony, a paramedic left to find the nearest Kings Island employee to tell him about the spill, thereby offering an explanation why Woolfork had a mop in hand when his supervisor saw him.
VanWassenhove's affidavit states that she did not ask Woolfork whether anything had leaked on the floor while he was changing garbage bags. VanWassenhove's affidavit testimony asserts that it was Mr. Goddard who told her that he had seen an employee leak liquid on the floor while emptying the garbage. As stated above, Mr. Goddard now says that he did not observe any such thing. Mr. Goddard testified in his deposition that the substance appeared to be a mixture of a carbonated beverage and beer. There is no evidence as to who was responsible for spilling the substance on the floor.
"Negligence must be shown from the facts; it may not be presumed or inferred from guess or speculation." Cupp v. Zozz
(Dec. 27, 1994), Butler App. No. CA94-06-122, unreported, at 2, citing Boles v. Montgomery Ward Co. (1950), 153 Ohio St. 381,388. Appellants urge this court to find that their observations of a Kings Island employee changing the garbage bags in the vicinity where the slip and fall occurred, coupled with the fact that just moments before, the area of the floor in question was spill-free, creates a material question of fact as to whether the substance had been spilled on the floor by the Kings Island employee. We agree with the trial court's reasoning that the Goddards' inference that Woolfork's changing of the garbage bags caused a leak is purely speculative without any additional observations about the cause of the leak. See Moran v. Thriftway,Inc. (Oct. 28, 1996), Clermont App. No. CA96-07-059, unreported.
Appellants ask this court, as they asked the trial court, to consider the incident investigation report submitted by Kings Island as evidence that Woolfork was responsible for causing the spill or leaving a known spill unattended and unmarked as a hazardous existing condition. Because the report is based upon the statements of the Goddards rather than on the direct knowledge or observations of the writer of the report, it is hearsay within hearsay. Evid.R. 805 states, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." The trial court found that this report was inadmissible hearsay within hearsay. The trial court found that the report was not an admission by a party-opponent, and not covered by the business record exception to the hearsay rule.
Evid.R. 801(D)(2) states that admissions by a party-opponent are not hearsay.[1] Appellants argue that the incident report should have been considered as an admission by a party-opponent,i.e., Kings Island. A cursory review of the incident report leads to the conclusion that Kings Island is admitting that a Kings Island employee either created the spill or left it unattended. In this report, VanWassenhove states that an associate "had just emptied the garbage can and that the bag was leaking and that had caused the spill. The associate had not had time to clean up [the] spill." However, the affidavit of Jerry Gee, the accident investigator who wrote the incident report, states that all information about the cause of the spill came from Mr. and Mrs. Goddard. VanWassenhove's affidavit also states that she received all information about the cause of the spill from Mr. Goddard. Despite the fact that the incident report form was supplied by Kings Island and completed by a Kings Island employee, the source of the information therein originated from the Goddards. As such, it cannot be used against the appellees as an admission by party-opponent.[2]
Appellants also assert that the incident report is a business record that should have been considered pursuant to Evid.R. 803(6). Evid.R. 803(6) defines a record of regularly conducted activity, or a business record, as follows:
 A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * * (Emphasis added.)
As explained above, the circumstances in this case indicate a lack of trustworthiness. All information about the source of the spill originated from the Goddards, who later admit that they did not see any Kings Island employee create the spill. Therefore, the incident report does not qualify as a business record under Evid.R. 803(6).
A business owner is not an insurer of the safety of its customers. Paschal, 18 Ohio St.3d at 203. Appellants have failed to produce sufficient evidence that would demonstrate a genuine issue of fact with respect as to whether Kings Island had actual or constructive notice of the presence of a dangerous condition or that Kings Island was directly responsible for placing the slippery substance on the floor. See, also, Moran v. ThriftwayInc., Clermont App. No. CA96-07-059, unreported; Bunnell v. ShellOil Station, Warren App. No. CA95-08-080, unreported; Cupp v.Zozz, Butler App. No. CA94-06-122, unreported. Therefore, Kings Island has not breached its duty of care and appellees are entitled to judgment as a matter of law. The assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., concurs.
VALEN, J., dissents.
[1] Evid.R. 801(D)(2) defines an admission by a party-opponent as the following:
 The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during he course and in furtherance of the conspiracy upon independent proof of the conspiracy.
[2] In their reply brief, appellants seem to suggest that statements in the incident report could be admitted as statements against interest under Evid.R. 804(B)(3). However, the statement against interest exception to the hearsay rule is only applicable where the declarant is unavailable as a witness. Evid.R. 804(B)(3). Therefore, this hearsay exception is not applicable to this case, in which all witnesses were available to testify.